UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| TAMMY L. KNOX, | ) |  |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 2:17-cv-00193-GZS |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Performing the Duties and Functions Not Reserved to the Commissioner of Social Security, | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the ALJ erred at Step 3 in determining that she did not medically equal the criteria of Listing 12.08, Appendix 1 to 20 C.F.R. Part 404, Subpart P ("the Listings"). *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 11) at 4-11. I find no error. Accordingly, I recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, Finding 1, Record at 37; that she had the severe impairments of anxiety-related disorder/post-traumatic stress disorder ("PTSD") and personality disorder/borderline personality disorder, Finding 3, *id.*; that she had no impairment or combination of impairments that met or medically equaled in severity the criteria of a listed impairment, Finding 4, *id.* at 38; that she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the nonexertional limitations that she could understand and remember only short, simple instructions, she was able to work in two-hour time blocks in a normal workday/week performing simple tasks with appropriate concentration, persistence, and pace, she could interact occasionally with coworkers and supervisors but never with the general public, she would do best in a job with minimal social interactions, she could adapt to occasional, simple changes in the work setting (low stress), and she could be aware of normal hazards and take appropriate precautions, Finding 5, *id.* at 40; that, considering her age (44 years old, defined as a younger individual, on her date last insured, December 31, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 42; and that she, therefore, had not been disabled from January 29, 2014, her amended alleged disability onset date, through December 31, 2015, her date last insured, Finding 11, *id.* at 43. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health*

*& Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 404.1525(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

## I. Discussion

### A. Background

At the plaintiff's administrative hearing, held on February 2, 2016, psychologist James Claiborn, Ph.D., testified as a medical expert. *See* Record at 35. In response to questioning by the ALJ, Dr. Claiborn testified, in relevant part, that he "[did not] believe" that "the signs and symptoms or laboratory findings associated with the impairments of [the plaintiff,] when

considered either singly or in combination[,] equal[ed] a listing." *Id.* The ALJ then elicited Dr. Claiborn's testimony regarding the plaintiff's mental RFC. *Id.* at 105-10.

The plaintiff's hearing counsel, who also represents the plaintiff in this appeal, then questioned Dr. Claiborn, in response to which he testified that: (i) based on the plaintiff's diagnoses of PTSD and personality disorder, it would be accurate to conclude that "she may have some significant issues with emotional stability[,]" *id.* at 111, (ii) the plaintiff's emotional stability would at times "have a significant impact" on her "functionality[,]" although he "didn't know . . . how to predict how often or . . . how much of an impact" it would have, *id.*, (iii) "people with [the plaintiff's] kind of personality disorder . . . are often poorly skilled at emotional regulation[,]" and, therefore, it would be "fair" to conclude "that there will be times or certainly could be times where that problem is going to translate into moderate to more marked limitations on functioning," *id.* at 112-13, (iv) "people with borderline personality disorder are often prone to abruption and sometimes frequent changes in mood when they get quite upset or depressed over . . . what others might consider relatively minor events[,]" which is "likely to have an impact on their interpersonal relations[,]" and "[t]hey may be overly sensitive to criticism, they may be a little suspicious about people and they tend to idealize and then demonize the same individual over time[,]" *id.* at 113, (v) given the evaluation of agency examining consultant Edward Quinn, Ph.D., and the plaintiff's testimony, it was "fair to say that those symptoms ha[d] been present with [the plaintiff,]" *id.* at 113-14, (vi) "[the plaintiff] may engage in . . . avoidant behavior," *id.* at 114, (vii) it would be "consistent" with the plaintiff's PTSD diagnosis if she experiences "episodes of hypervigilance" and "recurrent intrusive memories of traumatic events when she's out in public[,]" *id.*, and (viii) "[the plaintiff] may not be able to predict" when she would experience "symptoms of depression, recurrent intrusive memories of traumatic events, . . . [and] symptoms of physical isolation[,]" *id.*

4

at 115-16. The plaintiff's counsel did not question Dr. Claiborn regarding his previously stated opinion that the plaintiff's impairments neither met nor equaled a listing. *See id.* at 110-18.

On further questioning by the ALJ, Dr. Claiborn testified that, "despite [his] responses to [the plaintiff's counsel's] skillful questioning, . . . [he] believe[d] based on all [of] the facts and circumstances of this case that the RFC [he] provided [was] an accurate reflection of the [plaintiff]'s abilities[.]" *Id.* at 115.

The ALJ found that, while the plaintiff's borderline personality disorder and PTSD were severe impairments, *see* Finding 3, *id*. at 37, "[t]he severity of [her] mental impairments, considered singly and in combination, did not meet or medically equal the criteria of [L]isting . . . 12.08[,]" *id*. at 39.

### B. Merits

The plaintiff contends that the ALJ erred when he found that her impairments did not medically equal Listing 12.08, which pertains to personality disorders. *See* Statement of Errors at 4-11.[2] She argues that, despite Dr. Claiborn's testimony that her impairments did not equal a listing, his later testimony in response to her counsel's questioning demonstrates that they did. *See* Statement of Errors at 10.

She adds that Dr. Quinn's report also supports such a finding and that Dr. Claiborn's hearing testimony is consistent with her own. *See id*.; *see also* Record at 419 (findings by Dr. Quinn that plaintiff "may have some difficulties interacting with others due to personality factors[,] . . . may have some difficulties with stressors[,] . . . may have some significant issues with emotional stability[,] . . . [and] may have difficulties in social settings").

---

[2] The plaintiff clarifies that she does not contend that her impairments *met* Listing 12.08. *See* Statement of Errors at 7.

At oral argument, the plaintiff's counsel further contended that the ALJ's failure to reconcile material conflicts in the Claiborn testimony as to whether his client's impairments equaled a listing warranted remand.

The commissioner rejoins that (i) the plaintiff waived her challenge to the Listing 12.08 finding by failing to raise it before the ALJ, (ii) in the alternative, she fails to make a valid *prima facie* case that her impairments equal the severity of Listing 12.08, both because she relies on the current version of that listing rather than the version in effect at the time of the ALJ's decision and because she offers no expert opinion on the matter, and, (iii) in the alternative, the ALJ's finding that her impairments did not equal a listing is supported by substantial evidence. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 12) at 3-12.

I agree that the plaintiff's bid for remand founders on the alternative bases that (i) she fails to make out a *prima facie* that her impairments equal Listing 12.08 and, (ii) in any event, the ALJ's finding that they did not is supported by substantial evidence. In those contexts, I address issues of waiver.

### 1. *Prima Facie* Case That Impairments Equal Listing 12.08

As the commissioner observes, *see* Opposition at 4-5, a claimant challenging an ALJ's determination that her impairments did not equal a listing bears the burden to identify objective medical findings and "explain how these findings can 'equal' the listing[,]" *Burnham v. Soc. Sec. Admin. Comm'r*, No. 1:11-cv-00246-GZS, 2012 WL 899544, at *3 (D. Me. Mar. 15, 2012) (rec. dec., *aff'd* Apr. 3, 2012). The plaintiff fails to do so here because she relies on the current version of Listing 12.08 rather than the version in effect as of the ALJ's March 2, 2016, decision.

To meet both the current and prior versions of Listing 12.08, a claimant must meet at least one of several paragraph A criteria and have, *inter alia*, a marked level of limitation in at least two

6

of four areas of functioning described in paragraph B. *Compare* Listing 12.08, 20 C.F.R. Appendix 1 to 20 C.F.R. Part 404, Subpart P (Apr. 1, 2016) ("2016 Version") *with* Listing 12.08, 20 C.F.R. Appendix 1 to 20 C.F.R. Part 404, Subpart P (Apr. 1, 2017) ("Current Version").

However, as the commissioner points out, *see* Opposition at 5-7 & n.1, substantive changes were made to Listing 12.08. For example, Paragraph A of the 2016 Version requires that a claimant show:

> Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
>
> 1. Seclusiveness or autistic thinking; or
> 2. Pathologically inappropriate suspiciousness or hostility; or
> 3. Oddities of thought, perception, speech and behavior; or
> 4. Persistent disturbances of mood or affect; or
> 5. Pathological dependence, passivity, or aggressivity; or
> 6. Intense and unstable interpersonal relationships and impulsive and damaging behavior[.]

Listing 12.08(A), 2016 Version.

By contrast, paragraph A of the Current Version requires:

> Medical documentation of a pervasive pattern of *one* or more of the following:
>
> 1. Distrust and suspiciousness of others;
> 2. Detachment from social relationships;
> 3. Disregard for and violation of the rights of others;
> 4. Instability of interpersonal relationships;
> 5. Excessive emotionality and attention seeking;
> 6. Feelings of inadequacy;
> 7. Excessive need to be taken care of;
> 8. Preoccupation with perfectionism and orderliness; or
> 9. Recurrent, impulsive, aggressive behavioral outbursts.

Listing 12.08(A), Current Version (emphasis in original).

The plaintiff contends that the following testimony of Dr. Claiborn demonstrates that she was "prone to and does have 'instability in her interpersonal relationships['] as required by [Listing] 12.08(A)[,]" Statement of Errors at 6-7:

7

> [P]eople with borderline personality disorder are often prone to abruption and sometimes frequent changes in mood when they get quite upset or depressed over . . . what others might consider relatively minor events. They're likely to have an impact on their interpersonal relations in this instance. They may be overly sensitive to criticism, they may be a little suspicious about people and they tend to idealize and then demonize the same individual over time, things like that.

Record at 113.[3]

She argues that her impairments equaled Listing 12.08 because Dr. Claiborn's testimony indicated not only that she met the criteria of paragraph A but also that she had one of the two marked restrictions required by paragraph B as well as additional significant impacts from her personality disorder. *See* Statement of Errors at 7-9.

Yet, as the commissioner points out, *see* Opposition at 6, the most analogous provision of the applicable version of paragraph A of the listing required a demonstration of "[d]eeply ingrained, maladaptive patterns of behavior associated with . . . [i]ntense and unstable interpersonal relationships and impulsive and damaging behavior[,]" Listing 12.08(A) (2016 Version).

At oral argument, the plaintiff's counsel did not contest the applicability of the 2016 Version.[4] Instead, he contended that the Claiborn testimony sufficed to show that his client's impairments equaled either version. However, he did not explain *how* that testimony or, for that matter, Dr. Quinn's findings, sufficed to show that the plaintiff's impairments equaled the 2016 Version, and it is hardly self-evident that they do. This is fatal to the plaintiff's bid for remand. *See Graham v. United States,* 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond

---

[3] Dr. Claiborn agreed that it was "fair to say that those symptoms have been present with" the plaintiff. Record at 113-14.

[4] In any event, the commissioner made clear that (i) her revised regulations on the evaluation of mental disorders, including Listing 12.08, became effective January 17, 2017, (ii) the prior regulations continued to apply until that date, and (iii) the revised regulations would apply "to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 (Sept. 26, 2016) (footnote omitted). Lest there were a doubt, the commissioner added: "We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." *Id.* at 66138 n.1. The instant decision was issued on March 2, 2016, *see* Record at 44, and, thus, the prior regulations apply.

peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted); *see also, e.g., Nelson ex rel. S.N. v. Astrue*, Civil Action No. 09-10729-JGD, 2010 WL 3081690, at *11 n.5 (D. Mass. Aug. 6, 2010) (claimant waived argument that ALJ erred in finding that her mental impairments did not meet or medically equal a listing when she "provided no analysis of the applicable regulatory provisions and [did] not attempt[] to show how the evidence in the record satisfie[d] the relevant criteria").

## 2. Substantial Evidence

In any event, as the commissioner argues in the alternative, *see* Opposition at 8-12, the ALJ's finding that the plaintiff's impairments did not meet or equal Listing 12.08 is supported by substantial evidence. The ALJ explicitly relied on the opinion of agency nonexamining consultant David R. Houston, Ph.D., in support of that finding, *see* Record at 39, 147, and, as noted above, Dr. Claiborn testified at hearing that the plaintiff's mental impairments neither met nor equaled a listing, *see id*. at 105.[5] The plaintiff proffers no expert opinion to the contrary. For the reasons discussed above, she fails to make out a *prima facie* case that other portions of the Claiborn testimony on which she relies demonstrate that her impairments equaled Listing 12.08.

Beyond this, as the commissioner notes, *see* Opposition at 9, the fact that both Drs. Houston and Claiborn found that the plaintiff retained the mental RFC to perform a range of substantial gainful activity "tends to reinforce the inference that [her impairments] neither me[]t nor equal[ed]" a listing, *Burnham*, 2012 WL 899544, at *3. This is so because the standard for meeting

---

[5] At oral argument, the plaintiff's counsel contended that the ALJ's reliance on the Houston opinion was misplaced because Dr. Houston addressed only Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). As the commissioner observes, *see* Opposition at 9, this challenge was not raised in the statement of errors. It is, therefore, waived. *See, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

9

or equaling a listing at Step 3 is more stringent than that by which disability is determined at Steps 4 and 5 based on a claimant's RFC. *Compare* 20 C.F.R. § 404.1525(a) (providing that the Listings " describe[] . . . impairments that we consider to be severe enough to prevent an individual from doing *any gainful activity*, regardless of his or her age, education, or work experience") (emphasis added) *with id.* § 404.1505(a) (defining "disability as the inability to do *any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months") (emphasis added); *see also, e.g, Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) ("The [commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The [L]istings define impairments that would prevent an adult, regardless of his [or her] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'") (emphasis in original).

At oral argument, the plaintiff's counsel nonetheless contended that remand is required because the ALJ failed to resolve a material conflict in Dr. Claiborn's own testimony. He posited that, because Dr. Claiborn had given two diametrically opposed sets of answers bearing on the question of whether the plaintiff's impairments equaled a listing, the ALJ had an obligation to address the internal inconsistency. Yet, as the commissioner suggests, *see* Opposition at 4, the ALJ was not put on clear enough notice of that conflict to have been obliged to resolve it.

"When a claimant is represented, the ALJ[] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored." *Faria v. Comm'r of Soc. Sec.*, No. 97-2421, 1998 WL 1085810 at *1 (1st Cir. Oct. 2, 1998) (citation and internal punctuation marks omitted). The plaintiff's counsel did not make clear that his colloquy with Dr. Claiborn regarding the plaintiff's symptoms implicated

10

the question of whether her impairments equaled Listing 12.08 or, for that matter, any other listing. Indeed, he never mentioned the word "listing." Record at 110-18.

Moreover, the ALJ signaled that he understood the plaintiff's counsel's line of inquiry to bear on the plaintiff's mental RFC when he asked Dr. Claiborn whether, "despite [his] responses to [the plaintiff's counsel's] skillful questioning," he believed "based on all [of] the facts and circumstances of this case that the RFC [he] provided [was] an accurate reflection of the [plaintiff]'s abilities[.]" *Id.* at 115. Dr. Claiborn replied, "I believe it is." *Id.* Yet, the plaintiff's counsel never followed up with questioning clearing up that misapprehension, if any there was. *See id.* at 115-18.

In this respect, as the commissioner suggests, *see* Opposition at 4, this case is materially indistinguishable from *Baker v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00167-JAW, 2011 WL 1298694 (D. Me. Mar. 31, 2011) (*rec. dec.*, *aff'd* Apr. 19, 2011), in which this court rejected a claimant's argument that remand was warranted on the basis of an ALJ's failure to include a "two-hour block" restriction in the claimant's RFC or pose it to a vocational expert ("VE") present at his hearing, *see Baker*, 2011 WL 1298694, at *4-6.

In *Baker*, the court noted that the plaintiff's counsel, who was "an active participant at the hearing[,]" had "never suggested that . . . a capacity to sustain concentration and attention over two-hour blocks might meaningfully erode the unskilled work base or preclude any of the occupations discussed by the [VE] at the hearing." *Id.* at *5. This was fatal to the claimant's bid for remand on the basis of the ALJ's omissions, the court noted, reasoning, "There is an expectation that counsel will explore these concerns with the [VE] at the hearing, not leave such matters to technical challenges before the courts." *Id.* (citing *Faria*). The court observed:

> If the social security plaintiffs' bar wishes to elevate a two-hour block notation into a remand-worthy medical finding, it should develop [VE] testimony to establish the

materiality of such a notation and make that position clear to the [ALJ]. In this case, hearing counsel let the issue pass.

*Id.* at *6.[6]

In similar vein, the plaintiff's counsel did not make the plaintiff's position clear to the ALJ and did not establish through his questioning of the medical expert present at hearing, Dr. Claiborn, that there was objective support for a finding that her impairments equaled the applicable version of Listing 12.08. Thus, there was no apparent conflict in the Claiborn testimony for the ALJ to resolve.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,***

---

[6] This court has applied the same principle in at least two cases in which claimants represented by counsel failed to make asserted Listings errors clear to ALJs. *See Wasilauskis v. Astrue*, Civil No. 08-284-B-W, 2009 WL 861492, at *5 (D. Me. Mar. 30, 2009) (rec. dec., *aff'd* Apr. 21, 2009) (rejecting argument that ALJ analyzed claimant's hand injury under wrong listing when there was "no evidence of record that the plaintiff, who was represented by counsel, ever advised the [ALJ] that he claimed that his hand injury met Listing 1.08, or that the issue otherwise was put in play by a finding by a medical source that the injury met that listing"); *Oliver v. Astrue*, No. 07-157-B-W, 2008 WL 2778229, at *7 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 22, 2008) (rejecting argument that ALJ analyzed wrong listing when "[n]othing in the materials presented to the [ALJ] . . . discussed the Listings in a sufficiently detailed manner to put the [ALJ] on notice that [the claimant's medical expert] meant to refer to Listing 1.04A and not Listing 1.04C").

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 21st day of April, 2018.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge